1    55.    Defendants' conduct has at all times been knowing, willful, and with

complete disregard to the Leo Robin Trust's copyrights. As a proximate cause of

Defendants' wrongful conduct, Plaintiff has been irreparably harmed.

56.    *Reframed: Marilyn Monroe* with Robin's Works quantitatively and
qualitatively infringes the most distinct, important, recognizable and significant
portions of Robin's Works. Further, *Reframed: Marilyn Monroe* could not exist
without the exploitation of Robin's Works. This is demonstrated in the scene of Part
II in *Reframed: Marilyn Monro* where Marilyn Monroe performed "Diamonds Are a
Girl's Best Friend" in the 1953 film *Gentlemen Prefer Blondes*, with a critique by film
historian Cindy De La Hoz-Sipala who said, "This is Marilyn Monroe at her peak" and
then followed by film critic Alice Malone saying "still one of the imitative moments
in film history."

57.    From the date of the creation of the infringing of Robin's Works,
Defendants have infringed the Leo Robin Trust's copyrights interest in Robin's Works
including: (a) by substantially copying  or authorizing the copying including the
miniseries *Reframed: Marilyn Monroe* with Robin's Works appear on film, video,
television, internet and otherwise; (b) by authorizing the reproduction, distribution,
digital downloads and streaming through the execution of licenses, and/or actually
selling, manufacturing, and/or distributing the miniseries *Reframed: Marilyn Monroe*
with Robin's Works in various sources and outlets; (c) by substantially copying and

- 35 -

1   the related marketing and promotion of the videos, downloads, and streams; and (d)

2
3   by participating in and furthering the aforementioned infringing acts, and/or sharing

4   in the proceeds therefrom, all through substantial use of Robin's Works as part of

5
6   the miniseries *Reframed: Marilyn Monroe* which appear, packaged in a variety of

7   configurations and digital downloads, streams, including internet, film, video,

8   television, downloads, streams and otherwise.

9
10      58.    Leo Robin has not received songwriter or lyrical credit for, and CNN and

11  Raw has received no permission or license to exploit the Robin's Works in and for,

12
13  any of the exploitations of Robin's iconic songs "Thanks For The Memory,"

14  "Diamonds Are A Girl's Best Friend" and "Bye Bye Baby."

15      59.    The infringements by Defendants have been, and continue to be, willful
16
17  and knowing, and demonstrate a blatant disregard for Leo Robin's Trust's copyrights

18  to warrant punitive damages. The Defendants knowingly and intentionally used
19
20  Robin's Works without permission despite the widespread distribution. The

21  Defendants engaged in a pattern of repeated infringements including nine violations

22
23  based on the usage of the three songs of Robin's Works. The CNN Original Series

24  group is a production department, separate from the CNN newsroom, that develops

25  programming for television and streaming. As the title *Reframed: Marilyn Monroe*
26
27  implies, the Defendants have created their own story about *Marilyn Monroe;* the film

28  is a fictionalized take about Marilyn Monroe. Any production company routinely

1   clears the music rights prior to release of a film. The Defendants' actions are

2   egregious as demonstrated by its failure to clear all the music rights before releasing its
3

4   film *Reframed: Marilyn Monroe* – a reckless disregard for Leo Robin's Trust's

5   copyrights. Further, it is standard film protocol for songwriters to be given credit for
6

7   songs played in the film. You don't need to be a film producer or even a film buff to

8   know this because it is universal for the end credits to scroll from the bottom of the
9

10  screen to the top but in this case no credits for the songwriters of Robin's Works. The

11  Defendant's exploitation of Robin's Works is strictly to take credit for and benefit

12  themselves -- demonstrating a flagrant disregard for Leo Robin's Trust's copyrights.
13

14         60.    With knowledge of the infringement, the Defendants have induced,

15  caused, or materially contributed to, the infringing conduct of others, such that they
16

17  should be found to be contributorily liable.

18         61.    Defendants had the right and ability to control other infringers and
19
    have derived a direct financial benefit from that infringement such that Defendants
20

21  should be found to be vicariously liable.

22         62.    The infringement is continuing as the miniseries *Reframed: Marilyn*
23

24  *Monroe* with Robin's Works appearing on CNN, continues to be sold, licensed for

25  distribution, downloads, streams, ringtones and/or mastertones, and other
26

27  exploitations by Defendants or their agents.

28

1    63.    As a direct and proximate result of Defendants' conduct, Plaintiff has

2
3    suffered actual damages including lost profits, lost opportunities, and loss of

4    goodwill.

5    64.    Pursuant to 17 U.S.C. § 504, Plaintiff is entitled to actual damages,
6
7    including Defendants' profits, as will be proven at trial, and/or statutory damages,

8    and punitive damages, including attorneys' fees, for all eight violations of
9
10   infringement of the songs of "Robin's Works."

11   65.    Defendants' conduct is causing and, unless enjoined by this Court, will
12
13   continue to cause Plaintiff irreparable injury that cannot be fully compensated or

14   measured in monetary terms. Plaintiff has no adequate remedy at law. Pursuant to

15   17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting the
16
17   reproduction, distribution, sale, public performance or other use or exploitation of

18   Robin's Works.

19

20

21

22

23

24

25

26

27

28

1

## SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Direct, Contributory, And Vicarious Copyright Infringement
### Against All Defendants)

66.   Plaintiff re-alleges and incorporates by reference each of the foregoing

paragraphs, the allegations in paragraphs 1 through 65 above as though fully set

forth herein.[5]

67.   The Leo Robin Trust is the owner of the U.S. copyright in all rights, titles,

and interests in the songs "Diamonds Are A Girl's Best Friend" and "Bye Bye Baby"

and a "beneficial owner" of the copyright in "Thanks for the Memory."

68.   The Plaintiff's second cause of action is an alternative theory based on

unjust enrichment. This doctrine can be asserted in both state and federal courts

when California law applies. Federal district courts in California apply state law,

including California's unjust enrichment doctrine, when diversity jurisdiction exists

or a federal question is not involved. In California, unjust enrichment is a legal

doctrine that allows a party to recover benefits unfairly received by another party,

essentially preventing unjust enrichment.

---

[5]All of these allegations are foundational and critical for this cause; in particular, there are many
cited with substantial evidentiary support.

**PLAINTIFF'S VERIFIED COMPLAINT AGAINST CNN AND RAW FOR COPYRIGHT INFRINGEMENT FOR UNAUTHORIZED
EXPLOITATION OF LEO ROBIN'S ICONIC SONGS**

1    69.    In this case, the Plaintiff provided a benefit to the Defendants who
2
3    utilized the songs "Diamonds Are A Girl's Best Friend," "Bye Bye Baby" and "Thanks
4    for the Memory" in its film. It would be unfair or inequitable for the Defendants to
5    keep the benefit without paying for it. There is no legal or contractual basis for the
6
7    Defendants' enrichment. There is no other legal remedy available to address the
8    situation.
9

10    70.    The actions by Defendants have been, and continue to be, willful and
11    knowing, and demonstrate a blatant disregard for Leo Robin's Trust's rights to
12    warrant punitive damages. The Defendants knowingly and intentionally used Robin's
13
14    Works without permission despite the widespread distribution. The Defendants
15    engaged in a pattern of repeated infringements including eight violations and other
16
17    violations based on the usage of the three songs of Robin's Works. The CNN Original
18    Series group is a production department, separate from the CNN newsroom, that
19
20    develops programming for television and streaming. As the title *Reframed: Marilyn*
21    *Monroe* implies, the Defendants have created their own story about *Marilyn Monroe;*
22    the film is a fictionalized take about Marilyn Monroe. Any production company
23
24    routinely clears the music rights prior to release of a film. The Defendants' actions are
25    egregious as demonstrated by its failure to clear all the music rights before releasing its
26
27    film *Reframed: Marilyn Monroe* – a reckless disregard for Leo Robin's Trust's
28    copyrights. Further, it is standard film protocol for songwriters to be given credit for

- 40 -
**PLAINTIFF'S VERIFIED COMPLAINT AGAINST CNN AND RAW FOR COPYRIGHT INFRINGEMENT FOR UNAUTHORIZED
EXPLOITATION OF LEO ROBIN'S ICONIC SONGS**

songs played in the film. You don't need to be a film producer or even a film buff to know this because it is universal for the end credits to scroll from the bottom of the screen to the top but in this case no credits for the songwriters of Robin's Works. The Defendant's exploitation of Robin's Works is strictly to take credit for and benefit themselves -- demonstrating a flagrant disregard for Leo Robin's Trust's rights.

71.     The Defendants continue to violate the plaintiff's rights as the miniseries *Reframed: Marilyn Monroe* with Robin's Works appearing on CNN, continues to be sold, licensed for distribution, downloads, streams, ringtones and/or mastertones, and other exploitations by Defendants or their agents.

72.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill.

73.     Plaintiff is entitled to actual damages, including Defendants' profits, as will be proven at trial, and/or statutory damages, and punitive damages, including attorneys' fees, for all eight violations of infringement and other violations of the songs of "Robin's Works" estimated to be in the amount of $14.9 Million.

74.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. Plaintiff has no adequate remedy at law.

1

**PRAYER FOR RELIEF**

2

3          75.     Plaintiff re-alleges and incorporates by reference each of the foregoing

4   paragraphs, the allegations in paragraphs 1 through 65 above as though fully set

5   forth herein.[6]

6

7          WHEREFORE, Plaintiff prays for judgment against Defendants and for the

8   following relief:

9

10         A.      A permanent injunction prohibiting Defendants and their agents,

11  servants, employees, officers, attorneys, successors, licensees, partners, and assigns,

12  and all persons acting in concert or participation with each or any one of them, from

13

14  directly or indirectly infringing, or causing, enabling, facilitating, encouraging,

15  promoting, inducing, and/or participating in the infringement of, any of Leo Robin

16

17  Trust's rights protected by the Copyright Act; an order directing Defendants to

18  include credits on behalf of Leo Robin and/or the songwriters of the songs to be

19

20  included on any of the infringing Works, awards, accolades, events of prestige

21  and/or other public recognition attributed to these songs;

22

23

24

25

26  _____

27  [6] All of these allegations are foundational and critical for this cause; in particular, there are

28  many cited with substantial evidentiary support.

- 42 -
PLAINTIFF'S VERIFIED COMPLAINT AGAINST CNN AND RAW FOR COPYRIGHT INFRINGEMENT FOR UNAUTHORIZED
EXPLOITATION OF LEO ROBIN'S ICONIC SONGS

B.   An award of damages, for all eight violations of infringement and other

violations of the songs of "Robin's Works" estimated in total to be in the amount of

$14.9 Million as described below;

C.   An award of damages pursuant to 17 U.S.C. § 504(b), including actual

damages and Defendants' profits in an amount to be proven at trial;

D.   An award of statutory damages;

E.   An award of damages for unjust enrichment;

F.   An award of punitive damages;

G.   An award of attorneys' fees;

H.   For pre-judgment and post-judgment interest according to law, as

Applicable; and

I.   For such other and further relief as this Court may deem just and

proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims and causes of action so

triable in this lawsuit.

Sherman Oaks, California
DATED: February 11, 2026

By: Scott Douglas Ora

Scott Douglas Ora

In Pro Per

- 43 -

**VERIFICATION**

I, Scott Douglas Ora, declare as follows:

1. I, individually, am the Plaintiff in the above-entitled matter.

2. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

3. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint and if called on to testify I would competently testify as to the matters stated herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed in Sherman Oaks, California

DATED: February 11, 2026

By: Scott Douglas Ora

Scott Douglas Ora

In Pro Per

- 44 -
PLAINTIFF'S VERIFIED COMPLAINT AGAINST CNN AND RAW FOR COPYRIGHT INFRINGEMENT FOR UNAUTHORIZED EXPLOITATION OF LEO ROBIN'S ICONIC SONGS

# Appendix A

# Additional Certificate of Registration
## of a Claim to Copyright

This is to certify that the statements set forth
in the attached have been made a part of the
records of the Copyright Office with claim
of copyright registered under number

In testimony whereof, the seal of this office
is affixed hereto on



**Eu 155012**

**November 26, 2024**

*Shira Perlmutter*

United States Register of Copyrights and Director



Popular melodies, inc.

Thanks for the memory; from Big broadcast of 1938, song.

E2

OCT 14 1937
Application OCT 14 1937
©ciE unpub 155012

Rec rec'd $          $1.00 TRUST

IMPORTANT: Applicant must not write in the blank lines above; to do so will cause delay in Copyright Office.

LI R                APPLICATION FOR COPYRIGHT
         FOR MUSICAL COMPOSITION NOT REPRODUCED FOR SALE

REGISTER OF COPYRIGHTS, Washington, D.C.:          October 12, 1937.
     Of THE MUSICAL COMPOSITION named herein, not reproduced in copies for sale, ONE complete copy is herewith deposited to secure copyright registration according to the provisions of the Act of March 4, 1909. $1 (statutory fee for registration and certificate) is also enclosed. The copyright is claimed by

(1) Name of copyright owner   Popular Melodies, Inc.
                              (Write full legal name of copyright owner)

(2) Address   1619 Broadway          New York.          New York.
              (Street)               (City)             (State)

(3) Name of composer of music          Ralph Rainger.
                              (Write name in full)
                                                      [Please turn this over]

(c) Country of which the
composer or author is a citizen ......... United States.
(Answered)

(4) If the said composer domiciled in the United States, state when ...........

(5) Author of words, if any, who are not also joint composers ......... Leo Robbin

(6) Title of the full composition "THANKS FOR THE MEMORY" from Paramount
Broadcast of 1958

(8) Said entitle to a profit that (c) Famous Music Corporation.
1619 Broadway               New York             New York
(Street)                     (City)               (State)

(9) Name and address of the owner of any leading the (c) Popular Melodies, Inc. (2/07/
1619 Broadway               New York             New York
(City, State, Country)      (City)               (State)

# Appendix **B**

## Additional Certificate of Registration of a Claim to Copyright

This is to certify that the statements set forth in the attached have been made a part of the records of the Copyright Office with claim of copyright registered under number

In testimony whereof, the seal of this office is affixed hereto on



R 346728

November 26, 2024

*Shira Perlmutter*

United States Register of Copyrights and Director

Exp. 06/2025

Original copyright claimant .....Popular Melodies, Inc., New York.....................
(Name of claimant in original registration)    *Complete all applicable spaces on next page*    KP

Page 1

**FORM R**

REGISTRATION NO.

R 346728

DO NOT WRITE HERE

# Application for Registration of a Claim to Renewal Copyright

**Instructions:** Make sure that all applicable spaces have been completed before you submit the form. The application must be SIGNED at line 6. For further information, see page 4. Pages 1 and 2 should be typewritten or printed with pen and ink. Pages 3 and 4 should contain exactly the same information as pages 1 and 2, but may be carbon copies.

Mail all pages of the application to the Register of Copyrights, Library of Congress, Washington 25, D. C., together with the registration fee of $2. Make your remittance payable to the Register of Copyrights.

**1. Renewal Claimant(s), Address(es), and Statement of Claim:** Give the full name(s) and mailing address(es) of the claimant(s) of the renewal copyright. State the statutory category of each renewal claimant. It must be one of the categories described on page 4.

(a) Name .....Paramount Music Corporation

Address ...1619 Broadway, New York, N. Y. 10019

Claiming as .proprietor of copyright in a work made for hire (Leo Robin &
(Use the appropriate statement appearing on page 4)    Ralph Rainger)

(b) Name ......................................................................................................

Address ......................................................................................................

Claiming as ......................................................................................................

(c) Name ......................................................................................................

Address ......................................................................................................

Claiming as ......................................................................................................

**2. (a) TITLE:** Give the full title of the work. In the case of music give specific instrumentation.

.....................THANKS FOR THE MEMORY

**(b) Renewable Matter:** If the work was a new version of a previous work, renewal may be claimed only in the new matter. If this work was a new version, state in general the new matter (e. g., arrangement, editing, illustrations, translation, etc.) upon which copyright was claimed.

......................................................................................................

**(c) Contribution to Periodical or Other Composite Work:** If the work was a contribution, give the title of the periodical or composite work in which it was published, ......................................................................................................

If a periodical, give: Vol. ...................; No. ...................; Date ......................................................................................................

**3. Authors of Renewable Matter:** Give the names of all authors who contributed copyrightable matter to this version, but not the names of authors of previous versions. ....Words by Leo Robin    Music by Ralph Rainger

......................................................................................................

**4. Facts of Original Registration:** The facts given here must agree with the Copyright Office records of the original registration.

Original registration number: Class .........EU.............; No. .155012.

If registered as published, give date of publication ......................................................................................................
(Month, day, and year)

If registered as unpublished, give date of registration ...............Oct. 14, 1937.
(Month, day, and year)

Original copyright claimant ......Popular Melodies, Inc., New York
(Name of claimant in original registration)    Complete all applicable spaces on next page

KP

b. If registration fee is to be charged to a deposit account established in the Copyright Office, give name of account:
Famous Music Corporation

6. Name and address of person or organization to whom correspondence or refund, if any, should be sent:
Name ___ Famous Music Corporation ___ Address ___ 1501 Broadway, New York, N.Y. 10036

7. Send certificate to:

(Type or print name and address)

Name    Famous Music Corporation
Address    1501 Broadway
(Number and street)
New York        10036        N.Y.
(City)        (Zone)        (State)

8. **Certification:** (NOTE: Application not acceptable unless signed)

I CERTIFY that the statements made by me in this application are correct to the best of my knowledge.

_____ (Signature)

## Application Forms

Copies of the following forms will be supplied by the Copyright Office without charge upon request.

Class A — Form A—Published book manufactured in the United States of America.

Class A or B — Form A–B Foreign—Book or periodical manufactured outside the United States of America (except works subject to the ad interim provisions of the copyright law).

Form A–B Ad Interim—Book or periodical in the English language manufactured and first published outside the United States of America.

Class B — Form B—Periodical manufactured in the United States of America.

Form BB—Contribution to a periodical manufactured in the United States of America.

Class C — Form C—Lecture or similar production prepared for oral delivery.

Class D — Form D—Dramatic or dramatico-musical composition.

Class E — Form E—Musical composition the author of which is a citizen or domiciliary of the United States of America or which was first published in the United States of America.

Form E Foreign—Musical composition the author of which is not a citizen or domiciliary of the United States of America and which was not first published in the United States of America.

Class F — Form F—Map.

Class G — Form G—Work of art or a model or design for a work of art.

Class H — Form H—Reproduction of a work of art.

Class I — Form I—Drawing or plastic work of a scientific or technical character.

Class J — Form J—Photograph.

Class K — Form K—Print or pictorial illustration.

Form KK—Print or label used for an article of merchandise.

Class L or M — Form L–M—Motion Picture.

Form R—Renewal copyright.

Form U—Notice of use of copyrighted music on mechanical instruments.

FOR COPYRIGHT OFFICE USE ONLY

Application received
OCT 14 1964

Fee received

From "The Big Broadcast of 1938."

U.S. GOVERNMENT PRINTING OFFICE : 1962 O—636586

Page 2

# Appendix C

14593

........................................................................................................

PARAMOUNT PICTURES INC.

and

LEO ROBIN

and

RALPH RAINGER

........................................................................................................

Employment agreement commencing
December 24, 1936

........................................................................................................

DATED    November 25    19 36

AS 1-27 (8-71)
PRINTED IN U.S.A.

AGREEMENT made this 25th day of November,
1936, by and between PARAMOUNT PICTURES INC., a New York cor-
poration, hereinafter referred to as the "Corporation", and
LEO ROBIN AND RALPH RAINGER, hereinafter referred to as the
"Employees":

### W I T N E S S E T H:

FIRST:        The Corporation hereby employs the Employees,
and the Employees hereby agree to enter into the employ of the
Corporation, to render those services hereafter enumerated for
a period of two (2) years commencing December 24th, 1936, upon
the terms and conditions hereinafter specified, at the studios
of the Corporation in Los Angeles, California, and at such other
studios, and on such locations as the Corporation may, from time
to time, designate.

SECOND:        The Employees hereby agree to render and per-
form their services jointly as a team as and when required by the
Corporation to write and compose and arrange such musical com-
positions as the Corporation shall, from time to time, designate.
It is understood, however, that, inasmuch as the Employees have
heretofore established themselves as the team of Robin and Rainger,
and in order to permit the Employees to keep themselves established
as such team of Robin and Rainger, the Corporation may not assign
either of the Employees to perform his services in collaboration
with any other of the Corporation's employees without first

- 2 -

securing the written consent of the Employee to be so assigned,
and the Employees each agree that such written consent will not
in any instance be unreasonably withheld.

THIRD:            The Employees hereby accept said employment
and agree to give their entire time and attention and to devote
their best talents and abilities exclusively to the service of
the Corporation and/or such other person, firm or corporation as,
when and where the Corporation may direct, during the term hereof.

FOURTH:           The Corporation agrees to pay to each of the
Employees, and ea ch of the Employees agrees to accept in full
payment for the services to be rendered hereunder, salary at
the rate of One Thousand Dollars ($1,000.00) per week during
the period commencing December 24th, 1936 and ending December
23rd, 1937, and salary at the rate of One Thousand Two Hundred
Fifty Dollars ($1,250.00) per week during the period commencing
December 24th, 1937 and ending December 23rd, 1938.

            In addition to the above mentioned salary,
the Corporation agrees to pay or cause to be paid to each of the
Employees the sum of Two Hundred Fifty Dollars ($250.00) per
week during the term hereof, which sums shall be considered as non-
returnable advances against and deducted from any sums which may
accrue respectively to each of the Employees from the publication
of musical compositions written and/or composed by the Employees,
or either of them, during the term hereof, which the Corporation

- 3 -

or any subsidiary or affiliated corporation thereof, or any
assignee or licensee shall publish or cause to be published.

**FIFTH:**                  The Employees agree that they will not,
during the period of their employment hereunder, engage in any
other occupation, or in any business, except for the Corporation,
or such persons, firms, or corporations as may be designated by
the Corporation pursuant to this agreement, and excepting such
other employment as the Corporation may first approve in writing
and only to the extent thereof.

**SIXTH:**                  The Employees agree that during the period
of their employment hereunder they will not issue, or cause to
be issued, or authorize the issuance of, any publicity or advertis-
ing of any nature whatsoever of, or in connection with this
agreement, or Employees or their services hereunder.  Any
publicity concerning Employees, or either of them, this agree-
ment and/or the services of Employees to be rendered hereunder,
shall and may be issued solely by the Corporation and/or any
person, firm, or corporation subsidiary to, affiliated with, or
served by the Corporation as the Corporation may, from time to
time, designate and authorize;  and the Employees hereby grant
to the Corporation and to any person, firm, or corporation
designated by the Corporation, as aforesaid, the right to use
the names and likenesses of the Employees, or either of them,
in publicity and advertising in connection with their or his
services hereunder.

- 4 -

SEVENTH:        The Employees agree that, during the period
of employment hereunder, they will not, nor will either of them,
except as required by the Corporation, appear, participate,
perform, or permit their names or likenesses to be used in or in
connection with any radio concerts, or broadcasting by radio, or
broadcasting by any other method or device, or in, or in con-
nection with, recording of sound by phonographic record, or by
any other method or means of recording sound. Employees agree
that they, or either of them, will, as and when requested by
the Corporation, do any and all acts at places designated by the
Corporation, as the Corporation may request, in connection with
radio broadcasting and in the making of phonographic records, or
recording of sound.

EIGHTH:        The Corporation agrees to furnish the Em-
ployees with first-class transportation, including Pullman
accommodations when obtainable, whenever the Employees are called
upon to travel in rendering their services hereunder and to defray
the necessary living expenses of the Employees when rendering
services hereunder on "location"; provided, however, that such
transportation and necessary living expenses shall be furnished
only when the Employees' services are required to be performed
or are actually performed elsewhere than within a radius of
twenty-five (25) miles  from the city or place where an active
motion picture studio of the Corporation is maintained at which
the Employees' services hereunder are required to be performed,
but not otherwise.

~ 5 ~

**NINTH:**                    Any and all literary, dramatic and/or
musical material, and any and all mechanical devices originated,
composed, created, or designed by the Employees, or either of
them, during the term of this agreement for use in, or in con-
nection with, any motion picture photoplay, or for, or in con-
nection with, any other amusement vehicle or enterprise to which
the Employee may be assigned pursuant hereto, shall be and become
the sole property of the Corporation as the author thereof, and
the Employees shall have no right, title and/or interest there-
in, and the Corporation shall have the right to obtain copyrights,
patents and/or other protection therefor and for any part thereof,
in its own name or otherwise, and Employees agree to execute,
verify, acknowledge and deliver any and all papers which the
Corporation shall deem necessary or advisable, to evidence,
establish, maintain, protect, enforce, or defend the rights of
the Corporation hereunder.  The Corporation shall have the right
to use, adapt and change the said work or works and combine the
same with works of the Employees, or either of them, and/or other
artists, and to vend, copy, publish, reproduce, record, transmit,
broadcast, perform and communicate the same by any means now
known or hereafter devised, either publicly and for profit, or
otherwise.

**TENTH:**                    If the Employees, or either of them, are
performing services in connection with a motion picture production,
at the expiration of the term hereof, and if at such time the

- 6 -

Corporation shall not have made a new agreement for the further
services of the Employees, then, at the election of the Cor-
poration said term, with respect to the Employee then engaged
in performing services in such production, shall be automatically
extended for such additional period as may be required to com-
plete the services of the Employee then so engaged; and the
rate of salary last paid to the Employee then so engaged shall
continue for such additional period and shall be prorated for
any part of a week unfinished, for the purpose of which prorating
a week shall be deemed to consist of six (6) full working days.

ELEVENTH:          Should the Employees, or either of them, by
reason of illness, injury, accident or other cause, be incapacitated
or prevented from performing the services herein specified, or
should the Employees, or either of them, at any time fail, neglect
or refuse to render their or his said services, then the Corpora-
tion may suspend payment of all compensation to the Employees, or
either of them, during the period of such non-performance and
may extend the yearly period during which such non-performance
shall have occurred until such time as the Employees shall have
rendered services for the period aggregating the full term of
the said yearly period; provided, however, that such suspension
and/or extension by the Corporation shall not prejudice the right
of the Corporation to terminate this agreement at any time for
any of the reasons hereinafter specified and shall be deemed
cumulative and not exclusive of any other remedy to which the

- 7 -

Corporation may be entitled in law or in equity.  If the Em-
ployees, or either of them, shall in good faith, while the
suspension is in force (and provided that this agreement shall
not in the meantime have been terminated by the Corporation)
personally report to the Corporation ready, able and willing to
resume the performance of their or his said services, the Cor-
poration may nevertheless further suspend payment of salary to
the Employees, or either of them, for a period of time necessary
to make preparations for the actual utilization of the services
of the Employees, or either of them, not exceeding four (4) weeks,
and may extend the said yearly period of the Employees' employ-
ment for such additional time.

Should the Corporation pay the Employees, or
either of them, salary during any period of incapacity or failure
to perform, the time of such non-performance during which the
Corporation may have paid the Employees, or either of them, salary
shall nevertheless be added to the yearly period during which such
non-performance has occurred, and the salary paid to the Employees,
or either of them, during the yearly period of such non-performance
shall be treated as payment for the services of the Employees, or
either of them, during the time so added.  The payment of salary
to the Employees, or either of them, during any such period of
incapacity or failure to perform shall be wholly optional with
the Corporation and shall not constitute a waiver of any right
hereunder or any provision hereof.

- 8 -

The Corporation may terminate this agreement if the Employees, or either of them, should at any time fail, neglect or refuse to render their or his services pursuant hereto, or if the Employees, or either of them, in any other manner should breach this agreement; but in the event the Employees' failure to perform their or his services hereunder shall be due to illness, injury or accident, the Corporation may not terminate this agreement unless such illness, injury or accident shall continue for two (2) weeks.

TWELFTH:                 Should the Corporation be materially hampered, interrupted or interfered with in the normal conduct of its business of producing motion pictures by epidemic, fire, action of the elements, strikes, lockout, labor disputes, governmental order, court order, the act of God or a public enemy, wars, riots, civil commotion or other causes beyond the control of the Corporation, whether of the same or of any similar nature, or if for any reason whatsoever the majority of the motion picture theatres in the United States shall be closed for a week, or any period in excess of a week, as the result of which closing of such theatres, the Studios of the Corporation shall be closed, then the Corporation shall not be required to pay the Employees any salary during such interruption. Upon the resumption of work by the Corporation, a period of time equal to the period of such interruption, but not exceeding six (6) weeks, shall be added to

- 9 -

the yearly period during which such interruption may have
occurred, and the rate of salary payable to the Employees dur-
ing the period of such interruption shall be the rate of salary
to be paid to the Employees during the time so added, and the
commencement date of the succeeding yearly period shall be
correspondingly postponed.   If such interruption shall continue
beyond six (6) weeks, the Employees or the Corporation shall be
free to terminate this agreement, unless the Corporation shall
then resume payment hereunder.

THIRTEENTH:          If the Corporation or any of its subsidiary
or affiliated corporations, or any assignee or licensee shall
publish any wholly original work written by the Employees, or
either of them, pursuant hereto, as a separate musical number
for distribution and sale in the form of sheet music, the Cor-
poration agrees to pay or cause to be paid to the Employee who
shall have written such work, as additional compensation, an
equal share (which share shall be determined by the number of
authors and composers of each musical composition) of the follow-
ing sums which shall accrue to the Employees respectively, after
the sums hereinbefore provided to be paid as an advance, pursuant
to paragraph FOURTH hereof, has been deducted therefrom.  It is
understood that the following sums shall represent the total
amount to be paid by the Corporation for the publication of each
entire musical composition, including title, words and music, of
which the work of the Employees, or either of them, shall form a
part:

(a) For both words and music Three Cents (3¢) per copy upon each regular piano copy of such song or musical composition separately published and sold by and paid for to the Corporation in the United States and Canada when the wholesale selling price shall be Twenty Cents (20¢) or more per copy.

(b) For both words and music Two Cents (2¢) per copy upon each regular piano copy of such song or musical composition separately published and sold by and paid for to the Corporation in the United States and Canada when the wholesale selling price shall be Eighteen Cents (18¢) or less per copy.

(c) For both words and music Two Cents (2¢) per copy upon each regular orchestration copy of such song or musical composition separately published and sold by and paid for to the Corporation in the United States and Canada.

(d) For both words and music the sum of Five Dollars ($5.00) for each such song or musical composition, if and when such song or musical composition is published in any folio or composite work in the United States of America and Canada and Five Dollars ($5.00) for each such song or musical composition if and when published in such form in any foreign country, regardless of the number of copies published, provided however, that each such song or musical composition shall in no case be published in such form until four months after publication thereof in regular piano copies. Folios and/or composite works shall be deemed to include any publication of a collection of at least ten (10) or more works, contained within the same volume and/or binding.

(e) For both words and music an amount equal to thirty-three and one-third per centum (33 1/3%) of all net sums actually received by the Corporation with respect to each such song or musical composition from any other source or right now known or which may hereafter come into existence, (except small performing rights and except as provided in the next following paragraph hereof) subject, however, to all deductions for taxes.

No sums shall accrue or become payable to the
Employees from any uses made by the Corporation
or its associated, affiliated, subsidiary
and/or other companies with which it or any
of said corporations may have contracts and/or
arrangements for the production, performance,
television, exhibition and/or distribution of
motion pictures, of each such song or musical
composition by mechanical or electrical re-
cording, transcription or transmission and/or
in synchronization with motion pictures.

(f)        No sums shall be payable on professional
copies, orchestrations, arrangements, military
and brass band parts, selections and magazine
and newspaper reproductions, when these are
distributed gratuitously to leaders and
arrangers, or for advertising, exploiting or
publicising each such song or musical com-
position.

It is understood that the Corporation shall
have the sole right to decide if and when any of such songs or
musical compositions shall be published, advertised, publicised
or exploited.

FOURTEENTH:        The Employees hereby warrant and guarantee
that all music written by them pursuant hereto shall be wholly
original with them, and shall not be copied, in whole or in part,
from any other work, or based upon, or adapted from any other work,
except as indicated thereon.

FIFTEENTH:        It is agreed that if any musical composition
and/or compositions, which may be wholly written and/or composed
by the Employees, or either of them, hereunder, shall be incor-
porated in any of the motion picture photoplays which may be
produced by the Corporation, that the Corporation shall announce

- 12 -

the names of the Employees, or either of them, as the case may be,
on the film as the author and/or composer of such musical com-
positions, as the case may be.

SIXTEENTH:       It is understood and agreed that if the
Employees shall be assigned to render their services jointly in
connection with any of the motion picture productions which the
Corporation may produce, the Corporation agrees that no other
newly written musical compositions will be interpolated in the
musical score of such motion picture productions except to be
used incidentally without lyrics for background scoring. However,
if for any reason it should be impossible for the Employees to
complete the said musical score or the Corporation should find it
necessary to incorporate as a part of the said musical score any
newly written musical compositions other than for background
scoring, as aforesaid, the Corporation may do so but only with the
written consent of the Employees, which written consent the Em-
ployees agree not to unreasonably withhold.

SEVENTEENTH:      Any notice required to be given to the Employees
or the Corporation shall be given in writing and shall be addressed
to the Corporation  at 5451 Marathon Street, Hollywood, California,
and addressed to the Employees in care of Phil Berg- Bert
Allenberg, Inc., 9484 Wilshire Boulevard, Beverly Hills,
California, the Employees' agents, or to such other address
as the Employees may hereafter designate in writing, and
shall be sufficiently given by personal delivery thereof, or

- 13 -

by mailing the same in a postpaid wrapper addressed to the other
parties as aforesaid, and the date of such delivery or mailing
shall be the date of the giving of such notice.

EIGHTEENTH:          The Employees warrant that they are free to
enter into this agreement and to render their services herein-
before described, pursuant hereto.

NINETEENTH:          It is mutually understood and agreed that the
services of the Employees are extraordinary, unique and not re-
placeable and that there is no adequate remedy at law for a breach
of this agreement by Employees, and that in the event of a breach,
or threatened or attempted breach by Employees of this agreement,
the Corporation shall be entitled to equitable relief by way of
injunction, or otherwise, and that the Corporation shall be en-
titled to all other rights and remedies at law or in equity that
may be available to the Corporation  from time to time.

TWENTIETH:          All rights, privileges and benefits herein
granted by the Employees to the Corporation shall inure to the
benefit of any  and/or all corporations subsidiary to and/or
associated with the Corporation and this agreement and any and
all rights, privileges and benefits hereunder may be assigned by
the Corporation to any corporation subsidiary to and/or associated
with the Corporation.

          IN WITNESS WHEREOF, the parties hereto have

- 14 -

duly executed these presents the day and year first above
written.

Leo Rabin (sgd)(LS)

Ralph Rainger (sgd)(LS)

PARAMOUNT PICTURES INC.

By: Geo Bagnall (sgd)
      Assistant Treasurer

Form O.K. JHKarp (sgd)

W.